# UNITED STATES DISTRICT COURT

District of

| UNITED STATES OF AMERICA | COMMITMENT TO ANOTHER |
| v. | DISTRICT |
| Fernando Alvarez | FILED 2007 JAN 29 U.S. DISTRICT COURT BRIDGEPORT, CONN |

| DOCKET NUMBER | | MAGISTRATE JUDGE CASE NUMBER | |
|---|---|---|---|
| District of Arrest | District of Offense | District of Arrest | District of Offense |
| Connecticut | New York | 3:07 mj 13(WIG) | M-07-117 |

CHARGES AGAINST THE DEFENDANT ARE BASED UPON AN
☐ Indictment   ☐ Information   ☒ Complaint   ☐ Other (specify)

charging a violation of _____ U.S.C. §

**DISTRICT OF OFFENSE**

**DESCRIPTION OF CHARGES:** 21:841(a)(1) Conspiracy to distribute heroin

**CURRENT BOND STATUS:**

☐ Bail Fixed at _____ and conditions were not met
☒ Government moved for detention and defendant detained after hearing in District of Arrest
☒ Government moved for detention and defendant detained pending detention hearing in District of Offense
☐ Other (specify)

**Representation:** ☒ Retained Own Counsel   ☐ Federal Defender Organization   ☐ CJA Attorney   ☐ None

**Interpreter Required?** ☒ No   ☐ Yes   Language: _____

**DISTRICT OF** _____

TO: THE UNITED STATES MARSHAL

You are hereby commanded to take custody of the above named defendant and to transport that defendant with a certified copy of this commitment forthwith to the district of offense as specified above and there deliver the defendant to the United States Marshal for that District or to some other officer authorized to receive the defendant.

1/25/07 _____
Date                United States ~~Judge~~ or Magistrate Judge

**RETURN**

This commitment was received and executed as follows:

| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
|---|---|---|
| | | |

| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |
|---|---|---|
| | | |

01/26/2007 16:06   732-388-5376

W (Rev. EDNY 1996) Warrant for Arrest

17 019-014

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

V.

FERNANDO ALVAREZ, also known as "Rancho,"
Defendant:

**WARRANT FOR ARREST**

CASE NUMBER: M-07-117

TO: The United States Marshal
Drug Enforcement Administration Special Agent Chris Okaela
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest <u>Fernando Alvarez, also known "Rancho"</u>
                                              Name
and bring him forthwith to the nearest magistrate to answer a(n)

[ ] Indictment   [ ] Information   [X] Complaint   [ ] Order of Court   [ ] Violation Notice   [ ] Probation Violation Petition

charging her with (brief description of offense)

knowingly and intentionally conspiring to distribute heroin, in violation
of Title 21, United States Code, Section 841(a)(1)

in violation of Title  21  United States Code, Section(s) 846

HON. MARILYN D. GO
Name of Issuing Officer

UNITED STATES MAGISTRATE JUDGE
Title of Issuing Officer

_[signature]_
Signature of Issuing Officer

January 26, 2007
Brooklyn, New York
Date and Location

Bail fixed at $

By UNITED STATES MAGISTRATE JUDGE

**RETURN**

This warrant was received and executed with the arrest of the above name defendant at _____

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER: | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

** TOTAL PAGE.01 **

SLD:SCJ

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

FERNANDO ALVAREZ,
   also known as "Rancho,"

        Defendant.
- - - - - - - - - - - - - - - -X

M-07-117

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT
OF ARREST WARRANT

(21 U.S.C. § 846)

EASTERN DISTRICT OF NEW YORK, SS:

      CHRIS L. OKSALA, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

      Upon information and belief, on or about and between November 15, 2006 and January 18, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FERNANDO ALVAREZ, also known as "Rancho," together with others, did knowingly and intentionally conspire to distribute and to possess with intent to distribute more than one kilogram of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

      (Title 21, United States Code, Sections 846 and 841(b)(1)(A); Title 18, United States Code, Sections 3551 et seq.)

JAN 29 2007 10:54 FR US ATTORNEYS OFFICE   7182546327 TO 912035795550        P.03
Case 3:07-mj-00013-WIG   Document 2   Filed 01/29/07   Page 4 of 16

2

The source of your deponent's information and the grounds for his belief are as follows:

1.  I have been a Special Agent with the DEA since January 2004, duly appointed according to law and acting as such. The DEA investigates crimes involving narcotics, particularly drug trafficking. During my tenure with the DEA, I have participated in numerous narcotics investigations. Through my training, education and experience -- which has included debriefing numerous cooperating drug traffickers, monitoring numerous wiretapped conversations of drug traffickers, conducting numerous searches of locations where drugs and money have been found, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking -- I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2.  Since in or about September 2006, DEA agents in New York have been investigating Alexander Amaya (hereinafter "Amaya"), after receiving information from an on-going DEA wiretap investigation that Amaya was involved in narcotics trafficking. The defendant FERNANDO ALVAREZ, also known as "Rancho," has been intercepted engaging in narcotics related conversations with Amaya.

JAN 29 2007 10:54 FR US ATTORNEYS OFFICE    7182546327 TO 912035795550    P.04
Case 3:07-mj-00013-WIG   Document 2   Filed 01/29/07   Page 5 of 16

3

3. During the course of the investigation, I have personally participated in the investigation of this conspiracy by, among other things, conferring with other law enforcement agents involved in the investigation, conducting surveillance, debriefing confidential informants, and reviewing information provided to me by other agents, translators and agent reports. I have also personally been involved in monitoring pen registers, reviewing toll records, and reviewing and analyzing conversations and summaries of conversations intercepted pursuant to authorized wiretaps of telephones used by members of the conspiracy to conduct narcotics trafficking business. I have supplemented my personal knowledge by discussing this investigation with other law enforcement officers who also participated in this investigation. Those officers have provided me with additional information regarding this investigation upon their personal involvement. In this affidavit, unless otherwise indicated, I make no distinction between my own personal observations and activities and those provided by other law enforcement sources.

4. Wiretaps were authorized during the course of the investigation establishing probable cause to arrest, including, on or about November 20, 2006, the Honorable Sandra L. Townes, United States District Court Judge for the Eastern District of New York authorized the interception of the wire communications over telephone number (212) 671-2050, which was used primarily by

4

Alexander Amaya (the "AMAYA CELLPHONE"). Interception of the AMAYA CELLPHONE terminated on or about January 18, 2007.

5. The purpose of this affidavit is limited to setting forth probable cause to arrest the defendant FERNANDO ALVAREZ, also known as "Rancho." Therefore, I have not set forth every fact of which I am aware. As set forth below in this affidavit, your deponent has summarized certain portions of taped conversations that were intercepted during court-authorized wire surveillance. I have not summarized every pertinent intercepted call or all portions of the pertinent calls cited herein. Moreover, the summaries are preliminary and are often based on contemporaneous notes made by monitors of the wire surveillance and not on verbatim transcripts. All conversations set forth below are summarized in part and in substance only, and all times reflected herein are approximate and based on readings from the monitoring equipment.[1] The conversations summarized herein are not intended to be verbatim accounts of intercepted communications.

---

1   The contents of wire interceptions set forth in this affidavit are disclosed pursuant to Title 18, United States Code, Section 2517(2), which permits such disclosure whenever "appropriate to the performance of [my] official duties." Moreover, this affidavit will be disclosed to counsel for the defendant, and thus also serves as notice, pursuant to Title 18, United States Code, Section 2518(9), that the interceptions described herein may be used at detention hearings regarding the defendant.

JAN 29 2007 10:54 FR US ATTORNEYS OFFICE   7182546327 TO 912035795550   P.06
Case 3:07-mj-00013-WIG   Document 2   Filed 01/29/07   Page 7 of 16

5

6. Throughout this affidavit, my beliefs are expressly stated, or are set forth in brackets inserted in summaries of calls. These beliefs constitute the opinion of your deponent, based on: my experience and training in investigating narcotics; my review of intercepted communications, including other communications not summarized in this affidavit; information gathered from confidential sources and fellow agents; and my overall knowledge of and involvement in this case, as set forth in more detail above.

7. Unless otherwise indicated, identification on the wire interceptions in this investigation were made through name and voice identifications of the defendants made by the monitors and agents monitoring wire interceptions. Accordingly, agents initially identified each interceptee through the name that interceptee used to identify himself or herself at the beginning of conversations, or through the name other interceptees used to identify that interceptee at the beginning of conversations. Thereafter, in some cases, agents and monitors would identify the interceptees either through the use of their name or through voice identifications based upon comparisons with prior interceptions of those individuals.

8. The facts set forth in this affidavit are based on personal knowledge and observations, discussions with and information provided by confidential sources, surveillance,

6

review of the case file, and conversations with other law enforcement officers working with me on this investigation.

**BACKGROUND**

9. As set forth in the paragraphs below, I believe there is probable cause to believe that the defendant FERNANDO ALVAREZ, also known as "Rancho," is involved in the trafficking of narcotics, including heroin.

10. On or about September 29, 2006, the defendant FERNANDO ALVAREZ, also known as "Rancho," was arrested by Drug Enforcement Administration ("DEA") agents and is currently being prosecuted for heroin trafficking in Waterbury Superior Court in Waterbury, Connecticut. At the time of his arrest, DEA agents executed a search warrant of FERNANDO ALVAREZ's home and seized approximately $32,000 and 5 grams of heroin. FERNANDO ALVAREZ told DEA agents that he knew they were coming to arrest him. On or about September 30, 2006, FERNANDO ALVAREZ was released on a secured bond pending disposition of the Connecticut case. However, as set forth below, in or about December 2006 or 2007 or 2006, FERNANDO ALVAREZ was intercepted engaging in narcotics related conversations with an individual who lives in Queens, New York.

11. For example, on or about December 1, 2006, Alexander Amaya placed a call over the AMAYA CELLPHONE to a male, identified as "Rancho," later identified as the defendant

7

FERNANDO ALVAREZ,2/ using telephone number (646) 403-6069. Call 175. During the call Amaya asked, "Has that clown called you?" FERNANDO ALVAREZ replied, "He is calling me with some things there, he is calling me with some stories of his. I have to talk to you in person because I can't talk to you about that over the phone." Amaya said, "My friend found the guy and had a talk with him, talking shit. Were you going to see him?" FERNANDO ALVAREZ said, "Not me. ... that he wanted me to go up there so I would tell you a lie. And I was like I'm not going up there because I was like 'Why don't you go with these guys?' Because, he tells me, he is going to take, because he has some CDs and he is going to tell them that I gave them to him, you understand? That I gave it to him, so he can give them to you." Amaya said, "To clean himself." FERNANDO ALVAREZ said, "Yes, but look, what I'm trying to do is see if he comes down here ... because he thinks that by not coming down he doesn't have to pay the money for the CDs that he took. You understand? I will call you tomorrow so we can talk." Amaya said, "Okay. So when do I go up or what?" FERNANDO ALVAREZ said, "I have to tell you, give me until around Monday." Amaya said, "Okay, I will put away some music for you, a little music." Based on my training and experience, the other

---

2/  On or about August 31, 2006, a confidential source met with the defendant FERNANDO ALVAREZ. This meeting was consensually recorded. Based on a voice comparison, FERNANDO ALVAREZ and the person known as "Rancho" intercepted speaking to Amaya over the AMAYA CELLPHONE is the same person.

JAN 29 2007 10:55 FR US ATTORNEYS OFFICE    7182546327 TO 912035795550    P.09
Case 3:07-mj-00013-WIG   Document 2   Filed 01/29/07   Page 10 of 16

8

intercepted calls and my knowledge of the case thus far, it is my opinion that when FERNANDO ALVAREZ said "pay the money for the CDs" and Amaya said "I will put away some music for you" they were referring to exchanging money for drugs.

12. On or about December 7, 2006, Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 250. During the call FERNANDO ALVAREZ said, "I hadn't called, because I was waiting for a friend of mine and he hasn't called." Amaya replied, "Okay, I will go up later, I'm going to take you some music." FERNANDO ALVAREZ then said, "No, still." Amaya said, "Okay then, I will still go up later though." Later that same day, Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 251. During that call, Amaya said, "I'm going over there, I'm on [I-]95 ... We will see each other in a few minutes." Based on my training and experience, the other intercepted calls and my knowledge of the case thus far, it is my opinion that when Amaya said, "I'm going to take you some music" he was referring to narcotics and that Amaya met with FERNANDO ALVAREZ on or about December 7, 2006 to deliver narcotics.

13. On or about December 9, 2006, Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 261. During this call, FERNANDO ALVAREZ said, "Are you far?" Amaya replied, "No, I'm really close. I'll call you

JAN 29 2007 10:55 FR US ATTORNEYS OFFICE     7182546327 TO 912035795550     P.10
Case 3:07-mj-00013-WIG   Document 2   Filed 01/29/07   Page 11 of 16

9

in a while." Based on my training and experience, the other intercepted calls and my knowledge of the case thus far, it is my opinion that this call shows that Amaya and FERNANDO ALVAREZ met on or about December 9, 2006 in order to exchange drugs and/or drug proceeds.

14. The next day, on or about December 10, 2006, Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 263. During this call Amaya said, "How was 'Daddy Yankees' video? Good?" FERNANDO ALVAREZ said, Yes, yes ... It's good." Amaya said, "It was recorded pretty good?" FERNANDO ALVAREZ said, "It was decent." Based on my training and experience, the other intercepted calls and my knowledge of the case thus far, it is my opinion that when Amaya referred to the "Daddy Yankees video," he was referring to drugs and was asking FERNANDO ALVAREZ if the quality of the drugs delivered was satisfactory.

15. On or about December 18, 2006, Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 431. During this call, the defendant FERNANDO ALVAREZ and Amaya agreed to meet on Wednesday. On or about December 20, 2006, Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 465. During this call FERNANDO ALVAREZ said, "I'm going to see you tomorrow because tomorrow I'm going to Court ... because I didn't want you

JAN 29 2007 10:55 FR US ATTORNEYS OFFICE    7182546327 TO 912035795550    P.11
Case 3:07-mj-00013-WIG   Document 2   Filed 01/29/07   Page 12 of 16

10

to come up, because I am going to Court tomorrow, and I wanted to be sure you understand? ... So tomorrow, as soon as I get out of Court I will give you a call." On or about December 21, 2006, FERNANDO ALVAREZ and Amaya spoke and FERNANDO ALVAREZ said, "I'm in Harrison, I'll call you when I get back." I have confirmed, based on my discussions with DEA agents in Connecticut, that FERNANDO ALVAREZ appeared in court in Connecticut on or about December 21, 2006.

16. Calls intercepted over the AMAYA CELLPHONE indicate that FERNANDO ALVAREZ and Amaya also met on or about December 27, 2006. Call 539.

17. On or about January 2, 2007, Amaya received a call over the AMAYA CELLPHONE from FERNANDO ALVAREZ, using (646) 403-6069. Call 606. During the call Amaya said, "Okay, what was I going to tell you? When I go up there, I have some music that is good." FERNANDO ALVAREZ replied, "I have the CDs, the money for the CDs there." Amaya asked, "You want me to go tomorrow?" FERNANDO ALVAREZ replied, "Yes." Amaya then said, "Okay, I will go there tomorrow." Based on my training and experience, the other intercepted calls and my knowledge of the case thus far, it is my opinion that when Amaya said "I have some music" he was referring to narcotics. It is also my opinion that when FERNANDO ALVAREZ said "the money for the CDs" he was referring to narcotics proceeds.

JAN 29 2007 10:55 FR US ATTORNEYS OFFICE    7182546327 TO 912035795550    P.12
Case 3:07-mj-00013-WIG   Document 2   Filed 01/29/07   Page 13 of 16

11

18. On or about January 3, 2007, Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 431. During this call, FERNANDO ALVAREZ said, "are you there?" Amaya said, "I will be there in a couple of minutes."

19. On or about January 8, 2007, Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 677. During the call FERNANDO ALVAREZ said, "I still haven't called you because I was waiting on some people to pay the CDs." Amaya said, "Okay, good." FERNANDO ALVAREZ then said, "They are taking too long." Based on my training and experience, the other intercepted calls and my knowledge of the case thus far, it is my opinion that when FERNANDO ALVAREZ said "I was waiting on some people to pay for the CDs" he was referring to collecting money from narcotics customers to pay Amaya.

20. On or about January 9, 2007, Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 677. During the call FERNANDO ALVAREZ said, "I'm still missing a little ... I don't want to give you this. I want to give you all the CDs in full." Amaya said, "Fine." FERNANDO ALVAREZ said, "I'll call you as soon as this is ready." Based on my training and experience, the other intercepted calls and my knowledge of the case thus far, it is my opinion that when

JAN 29 2007 10:56 FR US ATTORNEYS OFFICE   7182546327 TO 912035795550   P.13
Case 3:07-mj-00013-WIG   Document 2   Filed 01/29/07   Page 14 of 16

12

FERNANDO ALVAREZ said "I'm still missing a little ... I don't want to give you this, I want to give you all the CDs in full," he was referring to collecting money from narcotics customers to pay Amaya.

21. On or about January 12, 2007, at approximately 4:19 p.m., Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 731. During the call, Amaya asked, "What's up? What's going on?" FERNANDO ALVAREZ replied, "Here you know ... in the Court all day." Amaya then asked, "Go or what?" FERNANDO ALVAREZ said, "Yes, come up ... Call me." Amaya replied, "Okay, okay, I will take you a DVD." Based on my training and experience, the other intercepted calls and my knowledge of the case thus far, it is my opinion that when Amaya referred to a "DVD," he was referring to narcotics. Also, I confirmed with DEA agents in Connecticut that FERNANDO ALVAREZ had a court appearance on or about January 12, 2007.

22. Later that same day, at approximately 9:40 p.m., Amaya received a call over the AMAYA CELLPHONE from FERNANDO ALVAREZ, using (646) 403-6069. Call 734. During this call, Amaya said, "I will be there in 15-20 minutes over there ... everything good, we will talk in a few."

23. Based on the above-referenced calls, on or about January 12, 2007 at 10:00 p.m., agents conducted surveillance of

13

a location in Waterbury, Connecticut based on cell site information from the AMAYA CELLPHONE indicating where the AMAYA CELLPHONE was located during previous meetings between Amaya and FERNANDO ALVAREZ. Agents observed a Nissan Armada owned by Alexander Amaya, but did not see FERNANDO ALVAREZ or his vehicle.

24. Shortly afterwards, on or about January 12, 2007, at approximately 10:12 p.m., Amaya placed a call over the AMAYA CELLPHONE to FERNANDO ALVAREZ, using (646) 403-6069. Call 736. During this call, Amaya said, "What's up are you near or what?" FERNANDO ALVAREZ said, "Yes, I'm here coming in." Amaya then said, "Okay because I left, because there was a guy there in a Monte Carlo ..." Amaya and FERNANDO ALVAREZ then agreed to meet shortly. " Based on my training and experience, the other intercepted calls and my knowledge of the case thus far, it is my opinion that when Amaya said that he left because of the guy in the "Monte Carlo," he was indicating that he moved from the agreed upon waiting place because he suspected he was being watched by law enforcement. In fact, one of the DEA agents performing surveillance was in a Chevrolet Monte Carlo. It is also my opinion that the purpose of the meeting between Amaya and FERNANDO ALVAREZ was to exchange drugs and/or drug proceeds.

25. Also, in or about January 2006, agents learned from a confidential source of information ("SOI") that the defendant FERNANDO ALVAREZ receives heroin on a regular basis

14

from a supplier based in the Eastern District of New York. According to the SOI, FERNANDO ALVAREZ receives approximately 500 grams of heroin at a time.

26. On or about January 19, 2006, the DEA arrested Alexander Amaya at his home in Queens, New York and seized the Nissan Armada. In a hidden compartment, or trap, in Amaya's Nissan Armada, agents found approximately 100 grams of heroin and 55 grams of cocaine. Based on the seizure and the calls described above, I believe that Amaya supplied heroin to FERNANDO ALVAREZ on multiple occasions in December 2006 and January 2007.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for defendant FERNANDO ALVAREZ, also known as "Rancho," so that he may be dealt with according to law.

_____
Chris L. Oksala
Special Agent
Drug Enforcement Administration

Sworn to before me this
26th day of January 2007

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK